IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHUNG KAO,

    Petitioner,                    No. CIV S-07-2739 LKK CHS P

    vs.

MIKE KNOWLES, et al.,

    Respondents.               FINDINGS AND RECOMMENDATIONS

_____/

I.    <u>INTRODUCTION</u>

      Petitioner Chung Kao is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges disciplinary action taken against him resulting in the loss of "good-time" credits.

II.    <u>CLAIMS</u>

      Petitioner claims that:

      A.    There was no evidence his action constituted a "serious rule violation";

      B.    His right to due process was violated; and

      C.    The state court opinion was contrary to federal law and was unreasonable.

      Upon careful consideration of the record and the applicable law, it is recommend that this petition for habeas corpus relief be denied.

III.     FACTUAL AND PROCEDURAL BACKGROUND

   A.     Facts

The first incident occurred, according to the June 2, 2006 Rules Violation Report, on May 30, 2006, when Correctional Officer Ward informed petitioner he was being moved to a different cell. Answer, Ex. 1 at 39. Petitioner reportedly refused the move and stated, "I am not going to move, I'd rather go to the hole." Id. Sergeant Dark then informed petitioner that continued refusal would result in disciplinary action and housing in Administrative Segregation. Id. Petitioner remained defiant and was escorted to the Program Lieutenant's office. Id. Petitioner allegedly told the Program Lieutenant that he would rather move to "the hole" (Administrative Segregation). Id. Petitioner was then moved to Administrative Segregation. Id.

A disciplinary hearing was held on June 13, 2006. Id. Petitioner testified that he was ordered to move "or go to the hole." Id. at 40. He claimed that he elected to move to Administrative Segregation and thus did not disobey any order because going to "the hole" was "part of [the] order." Id. He also argued that refusing a cell move was not a serious rule violation. Id. At the conclusion of the hearing petitioner was found guilty and assessed 30 days of disciplinary credit forfeiture. Id. at 41.

The second incident occurred on May 31, 2006, according to the Rules Violation Report of that same date. Plant Operation Staff reported observing petitioner typing a legal document on his authorized inmate work computer. Id. at 44. Correctional Officer Smith conducted an audit of that computer and found two personal legal files. Id. The first file was a letter addressed to a paralegal bearing petitioner's name, CDC number, and cell number. Id. The letter appeared to be written on behalf of another inmate. Id. The second file was a document concerning a lawsuit between petitioner and a third party. Id.

As a result of this report a disciplinary hearing was held on June 23, 2006. Id. Petitioner requested the hearing be postponed so that he could collect additional evidence. Id. That request was denied after the Hearing Officer found that the "inculpatory evidence against

1 [petitioner] [was] overwhelming" and that the additional evidence he was attempting to obtain

2 was "irrelevant." Id.

3 Petitioner pled not guilty and provided a typed statement in his defense. Petition

4 Part 2 at 34. With respect to the document related to the lawsuit petitioner argued that it was the

5 computer that created the unauthorized file and he merely provided the information in an attempt

6 to organize the computer's disorganized template files. Id. He stated that while he "could have

7 answered the wizard with fictitious information" at the time the file was created he had already

8 filed the legal document with the appropriate court. Id.

9 With respect to the letter to the paralegal written on behalf of another inmate he

10 claimed he was framed by prison staff in retaliation for filing grievances and legal actions. Id.

11 He claimed that after he was placed in Administrative Segregation on May 30, 2006, prison staff

12 searched his legal paperwork, found a copy of a letter a third party prepared for him, and used it

13 to create a file on his work computer. Id. at 35-36.

14 In support of this argument petitioner noted that Plant Operation Staff have a duty

15 to immediately report any impropriety. Id. at 36. He claimed that if he had written the letter on

16 his work computer he would have been observed by Plant Operation Staff. Id. He reasoned that

17 because he was not immediately reported and his computer was not immediately audited in his

18 presence he must not have been observed typing the letter. Id.

19 Finally, petitioner argued that he was the interpreter for the inmate referenced in

20 the letter and had been called upon to interpret for the prisoner during medical emergencies. Id.

21 He reasoned therefore that even if he did write the letter, "it apparently would have been for

22 benevolent purposes and not for my own benefit nor for any gain from others." Id.

23 At the conclusion of this hearing petitioner was found guilty and assessed 30 days

24 loss of work time credit. Answer, Ex. 1 at 49.

25 /////

26 /////

B. <u>State Habeas Review</u>

On February 7, 2007, petitioner filed a petition for writ of habeas corpus in the San Luis Obispo County Superior Court. Answer, Ex. 1 at 2. On May 2, 2007, that court denied the petition in a reasoned opinion. Answer, Ex. 2 at 2.

On or around June 27, 2007, petitioner filed a petition in the California Court of Appeal, First Appellate District. Answer, Ex. 3 at 2, 49. That petition was summarily denied on July 11, 2007. Answer, Ex. 5 at 2.

Petitioner then petitioned the California Supreme Court on July 30, 2007. Answer, Ex. 4 at 2. The California Supreme Court summarily denied that petition on September 19, 2007. Answer, Ex. 6 at 2. Petitioner filed this federal petition on December 19, 2007.

IV. <u>APPLICABLE STANDARD OF HABEAS CORPUS REVIEW</u>

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a).

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Although "AEDPA does not require a federal habeas court to adopt any one methodology," <u>Lockyer v. Andrade</u>, 538 U.S 63, 71 (2003), there are certain principles which guide its application.

First, the "contrary to" and "unreasonable application" clauses are different. As the Supreme Court has explained:

4

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in [Williams v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

/////

Bell v. Cone, 535 U.S. 685, 694 (2002). It is the habeas petitioner's burden to show the state court's decision was either contrary to or an unreasonable application of federal law. Woodford v. Visciotti, 537 U.S. 19, 123 S. Ct. 357, 360 (2002). It is appropriate to look to lower court decisions to determine what law has been "clearly established" by the Supreme Court and the reasonableness of a particular application of that law. See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir. 2000).

Second, the court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). So long as the state court adjudicated petitioner's claims on the merits, its decision is entitled to deference, no matter how brief. Lockyer, 538 U.S. at 76; Downs v. Hoyt, 232 F.3d 1031, 1035 (9th Cir. 2000).

Third, in determining whether a state court decision is entitled to deference, it is not necessary for the state court to cite or even be aware of the controlling federal authorities "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2003). Moreover, a state court opinion need not contain "a formulary statement" of federal law, so long as the fair import of its conclusion is consonant with federal law. Id.

/////
/////
/////

5

V.     DISCUSSION OF PETITIONER'S CLAIMS

    A.     Serious Rule Violation

        1)     Description of Claim

Petitioner argues that refusing a cell move and misuse of a state computer are not serious rule violations under California law, specifically 15 CCR section 3315(a). Memorandum in Support of Petition ("Mem.") at 9-11. He asserts that because his conduct did not amount to a serious rule violation any finding of such is without "some evidence" to support it and therefore a violation of his right to due process. Id.

        2)     Applicable Law and Discussion

California Code of Regulations Title 15 section 3315 defines what constitutes a "serious rule violation." The finding of a serious rule violation inconsistent with that section would therefore be a violation of state law. Absent some federal constitutional violation however, a violation of state law does not provide a basis for habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Petitioner cannot transform a state-law issue into a federal one merely by asserting a violation of due process. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). Petitioner's claim therefore is not cognizable in this federal habeas petition. Little v. Crawford, 449 F.3d 1075, 1082 (9th Cir. 2006); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

    B.     Due Process

        1)     Description of Claim

Petitioner argues that his right to due process was violated during the June 23, 2006 disciplinary hearing concerning the alleged misuse of his work computer. He argues that he was not allowed to present evidence in his defense. Specifically petitioner argues that he was prohibited from calling his former work supervisor and three former coworkers to testify. Mem. at 11. Also denied were requests for evidence from his work computer, copies of a letter he asserts that prison staff copied into his work computer, a letter from a third party, and a copy of a

court document "that would prove petitioner [had] no intention to create the pleading template file." Id. at 11-12.

### 2) State Court Opinion

The San Luis Obispo County Superior Court rejected this claim stating:

> In the four page type written statement Mr. Kao submitted to the hearing officer Mr. Kao admitted that he used the state owned computer for unauthorized purposes, but argued he did not create certain documents found on the computer's hard drive – the computer's software created them. While this subtle distinction may be important in some abstract sense, it has no practical significance in the context of the challenges in managing California's overcrowded prisons. Mr. Kao's admission is some evidence.

Answer, Ex. 2 at 2.

### 3) Applicable Law

It is well established that inmates subjected to disciplinary action are entitled to certain procedural protections under the Due Process Clause but are not entitled to the full panoply of rights afforded to criminal defendants. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); see also Superintendent v. Hill, 472 U.S. 445, 455-56 (1985); United States v. Segal, 549 F.2d 1293, 1296-99 (9th Cir. 1977) (observing that prison disciplinary proceedings command the least amount of due process along the prosecution continuum). An inmate is entitled to advance written notice of the charge against him as well as a written statement of the evidence relied upon by prison officials and the reasons for any disciplinary action taken. See Wolff, 418 U.S. at 563. In the disciplinary hearing context, an inmate does not have a right to counsel, retained or appointed, although illiterate inmates are entitled to assistance. Id. at 570.[1]

---

[1] In Wolff, the Supreme Court also observed:

> Where an illiterate inmate is involved, however, or whether the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently

7

An inmate has a right to a hearing at which he may "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Wolff, 418 U.S. at 566. See also Ponte v. Real, 471 U.S. 491, 495 (1985). The right to call witnesses is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution." Baxter v. Palmigiano, 425 U.S. 308, 321 (1976) (citing Wolff, 418 U.S. at 556). See also Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir. 2003); Bostic v. Carlson, 884 F.2d 1267, 1271 (9th Cir. 1989). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566. Prison officials may, but are not required to, explain their reasons limiting an inmate's efforts to defend himself. Ponte, 471 U.S. at 497. Should prison officials refuse to call a witness, they should explain their reasons in disciplinary proceedings or later in court proceedings. Id.; see also Bostic, 884 F.2d at 1274 (burden is on prison officials to provide justifications for refusal). So long as those reasons "are logically related to preventing undue hazards to 'institutional safety or correctional goals,' the explanation should meet the due process requirements as outlined in Wolff." Ponte, 471 U.S. at 497. However, as a general rule,

inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison disciplinary hearings. Id. at 510 (Marshall, J., dissenting). See also Baxter v. Palmigiano, 425 U.S. 308, 322-233 (1976).

The disciplinary hearing must be conducted by a person or body that is "sufficiently impartial to satisfy the Due Process Clause." Wolff, 418 U.S. at 571. The decision

---

competent inmate designated by the staff.

Wolff v. McDonnell, 418 U.S. 539, 570 (1974).

8

rendered on a disciplinary charge must be supported by "some evidence" in the record. Hill, 472 U.S. at 455. A finding of guilt cannot be "without support" or "arbitrary." Id. at 457. The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Hill, 472 U.S. at 455-56 and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also Barnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). Indeed, in examining the record, a court is not to make its own assessment of the credibility of witnesses or re-weigh the evidence. Hill, 472 U.S. at 455. The question is whether there is any reliable evidence in the record that could support the decision reached. Toussaint, 801 F.2d at 1105.

Where a protected liberty interest exists, the requirements imposed by the Due Process Clause are "dependent upon the particular situation being examined." Hewitt v. Helms, 459 U.S. 460, 472 (1983). The process due is such procedural protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990). In identifying the safeguards required in the context of disciplinary proceedings, courts must remember "the legitimate institutional needs of assuring the safety of inmates and prisoners" and avoid "burdensome administrative requirements that might be susceptible to manipulation." Hill, 472 U.S. at 454-55. The requirements of due process in the prison context involve a balancing of inmate rights and institutional security concerns, with a recognition that broad discretion must be accorded to prison officials. Wolff, 418 U.S. at 560-63; see also Baxter, 425 U.S. at 324.

/////

/////

9

4) <u>Analysis</u>

It is apparent that petitioner received all the process that was due in connection with the disciplinary hearing at issue. Review of the record, specifically Answer, Ex. 1 at 44-49, reveals that petitioner received advance written notice of the charges against him as well as a written statement of the evidence relied upon by prison officials and the reasons for the disciplinary action taken. See Wolff, 418 U.S. at 563. Petitioner was allowed to present a statement in his defense. Answer, Ex. 1 at 46-47. Though petitioner objects that he was "unjustifiably disallowed to call any witnesses or present any documentary evidence," the record shows that the reason given by the Hearing Officer for the denial was logically related to a legitimate correctional goal and that the testimony of the witnesses and the documentary evidence were either irrelevant or unnecessary for the fair resolution of the charge.

Petitioner's defense was that the file was part of a template he either unintentionally created, due to the computer's template software, or that someone else created the template on his computer. Id. at 46; Mem. at 11. In either case, petitioner claimed that prison staff "surreptitiously copied" the document text into the file on his computer. Mem. at 11. Petitioner requested the testimony of his former supervisor and three coworkers who he asserted would testify that while staff audits were normally done in the presence of inmates, the audit on this particular day was completed outside of petitioner's presence, after he completed his work for the day. Id. Petitioner also wished to confront his former supervisor about the allegation that she observed petitioner typing a legal form on his work computer. Id. In order to obtain this evidence petitioner required a postponement of the hearing. Id. at 44. The Hearing Officer denied these requests because the testimony and evidence were "irrelevant" in supporting petitioner's defense. Id.

Whether staff audits are normally conducted in the presence of inmates is irrelevant. This audit was conducted as a result of the report that petitioner was witnessed misusing his computer. The testimony of his coworkers was therefore irrelevant.

10

With respect to petitioner's request to confront his former supervisor about the report, inmates "have no constitutional right to confront and cross-examine adverse witnesses" in prison disciplinary hearings. Ponte, 471 U.S. at 510 (Marshall, J., dissenting). See also Baxter v. Palmigiano, 425 U.S. 308, 322-233 (1976). Further, protecting prison staff from confrontations with inmates is a legitimate security concern. While it is understandable that petitioner would want to cross examine his accuser the allegation was provided in detail so that petitioner could present any applicable defense. Further, the ultimate issue was the discovery of the files during the audit and not whether petitioner was observed creating them.

The documentary evidence petitioner requested consisted of three copies of a document he asserted that prison staff used to create the computer file, a letter from a third party claiming authorship, and a copy of a court document "that would prove petitioner [had] no intention to create the pleading file." Mem. at 12. Actual production of the document petitioner argued that prison staff used to create the computer file and the letter from the third party claiming authorship were unnecessary to resolving this allegation. Petitioner was free to, and did, present this claim to the Hearing Officer. The Hearing Officer's decision did not hinge upon viewing the physical copies but instead his evaluation of petitioner's explanation. Further, petitioner's assertion that the court document would "prove [he had] no intention to create the pleading file" implies that he did in fact create the file and does not aid his defense.

Plant Operation Staff alleged that they observed petitioner engaging in misuse of his computer. See Answer, Ex. 1 at 44. An audit of his computer by a correctional officer revealed two improper files. Id. The files contained information linking petitioner to them. Id. Petitioner's defense to this charge was that he unintentionally created the template and/or prison staff created the actual document. That defense was rejected by the Hearing Officer, who found that petitioner had to make a conscious choice to create the template file and enter specific information. Id. at 48. Further, the Hearing Officer found that the date of the letter drafted to the paralegal was the same date as staff reported observing petitioner engaging in the misuse. Id.

Based on this information the Hearing Officer found petitioner guilty. Id. at 49. That finding is supported by "some evidence" that carried "indicia of reliability." Specifically, the discovery of the files and the fact the files contained information implicating petitioner as the author. Petitioner has therefore failed to demonstrate that his right to due process was violated by the procedures of the disciplinary hearing or the resulting loss of good time credits.

### C. State Court Opinion

In his final claim petitioner argues that the state court opinion is contrary to and involves an unreasonable application of clearly established federal law, and is based on an unreasonable determination of the facts. This argument is a restatement of the standard under AEDPA, which provides that federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

With respect to the June 23, 2006 disciplinary hearing on the misuse of a state computer, petitioner argues that the opinion of the San Luis Obispo County Superior Court is contrary to and involves an unreasonable application of clearly established federal law because the court focused solely on whether there was "some evidence" to support the findings and did not address whether petitioner had been provided the appropriate procedural safeguards. Mem. at 21-24. Evaluation of petitioner's due process claim confirmed however that he received all the process that he was due.

Petitioner also argues that the state court opinion failed to address his claim that there is no evidence in the record to support the finding that refusing a cell move justifies a forfeiture of good time credits. Mem. at 25. When a state court has not reached the merits of a

petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). As discussed in petitioner's first claim however this is a state law question and is not a cognizable habeas claim.

There is no evidence in the record that the state court opinion is contrary to or involves an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts, and petitioner is therefore not entitled to relief on this claim.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's petition for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: May 21, 2009

CHARLENE H. SORRENTINO
UNITED STATES MAGISTRATE JUDGE

13